[Filed March 23, 1891.]

## J. H. OAKES *v.* THE N. P. R. R. CO.

CARRIERS OF PASSENGERS—BAGGAGE—FARE.—Carriers of passengers are responsible for the carriage and safe delivery of such baggage as by custom and usage is or-dinarily carried by travellers, and the payment of the usual fare includes in legal contemplation a compensation for the conveyance of such baggage.

BAGGAGE—INSURERS.—They are insurers of such baggage in the same manner and to the same extent as for goods or freight.

PERSONAL BAGGAGE—MERCHANDISE.—Baggage within the rule of such liability is confined to such articles as are usually carried as baggage for the personal use of the passenger, or for his convenience, instruction or amusement on the journey, and does not include that which is carried for the purposes of business, such as merchandise or the like.

MERCHANDISE—KNOWLEDGE OF CARRIER.—While the obligation of a carrier of pas-sengers is limited to ordinary baggage, yet if the carrier knowingly permit a passenger, either on payment or without payment of an extra charge, to take articles as personal baggage which is not properly such, it will be liable for their loss or destruction though without fault.

Multnomah county: E. D. SHATTUCK, Judge.

Defendant appeals. Affirmed.

This is an action brought by the plaintiff to recover from the defendant the sum of $1,401.25 on account of the alleged failure of the defendant to deliver to the plaintiff certain personal property, specifically enumerated in the complaint, and constituting the contents of seven trunks. The com-plaint alleges that at the time therein mentioned, the plaintiff, together with his wife and several other persons, naming them, constituted the Oakes Comedy Company, an organiza-tion giving theatrical entertainments in the villages and cities situated on the line of the company's road, and that on said day or the night thereof the plaintiff, as proprietor of said theatrical organization, had engaged and advertised his company to give an entertainment at Thompson's Falls, Montana, and had started with said company of people and baggage by the defendant's line of road to said place from

Hope, in Idaho; that prior to starting, he applied to defend-
ant's ticket agent at said Hope for transportation for himself
and other persons aforesaid and their trunks and contents
and other movable property necessary and proper to be used
by them in the business in which they were engaged and
necessary and proper as their wearing apparel; that he
informed said ticket agent that he desired transportation for
said persons and property, and said agent informed him that
it would be necessary for plaintiff to buy five first-class
tickets for the sum therein specified, to secure such transpor-
tation, and that thereupon plaintiff purchased said tickets
and secured said transportation and carriage, etc., and
delivered said property to its agents and servants, which was
accepted and taken in their charge and care, and for which
he received checks in addition to his said tickets; that it
refused and failed to deliver, etc., and through its own neg-
ligence said train was wrecked, and a large part of the
property was destroyed by fire, etc.

The answer of the defendant put in issue all the allegations
of the complaint, or that it had any knowledge or informa-
tion as to the contents of such trunks or the value thereof, etc.

Upon the trial the jury, at the request of the defendant,
were required to find special answers to the following ques-
tions:   (1) What do you find to be the value of the baggage
belonging to the plaintiff and his company which was lost
in the wreck of defendant's cars March 25th last, aside from
the stage properties, costumes, musical instruments and
theatrical property of the comedy company?   Answer—
$381.25.   (2) What do you find to be the value of the stage
properties, musical instruments, advertising matter, tickets,
stage costumes and stage paraphernalia, destroyed in the
wreck on the 25th of March last?   Answer—$754.75.   At
the same time the jury found a general verdict in favor of
the plaintiff for $1,136, being for the full value of all the
property belonging to the plaintiff and his company which
was lost in the wreck.   The counsel for the defendant moved
to set aside the general verdict because the same was incon-

sistent with the special findings found by the jury, and moved the court to render a judgment upon such special findings in favor of the plaintiff and against the defendant for the sum of $381.25, which the court refused to do, and rendered judgment for the plaintiff for the sum of $1,136.

*Dolph, Bellinger, Mallory & Simon,* for Appellant.

By baggage in the legal sense, is meant simply such articles of personal necessity, convenience, comfort, and recreation, as travelers under the circumstance are wont to take on their journey; or as the expression goes, ordinary baggage. (Schouler's Bail. and Car. § 667; Hutchinson on Car. §§ 674, 685, 686; 56 Ill. 293; 44 N. H. 330; 6 Hill, 586, 41 Am. Dec. 767; 2 Rorer on Railroads, 988; 56 Me. 60, 96 Am. Dec. 435; 42 N. Y. 326, 1 Am. Rep. 527; 25 Wend. 460.)

A passenger who gives his trunk silently to be checked as personal baggage, represents by implication that it contains nothing else. (79 Me. 550; 126 Mass. 121, 30 Am. Rep. 667; 29 Minn. 160, 43 Am. Rep. 199.)

*Jones & Stuart,* for Respondent.

The law defines what baggage should consist of to be carried by a passenger on a railroad, to wit: Such articles of apparel, ornaments, etc., as are in daily use by the travelers for conveniences, comfort or recreation. It includes whatever the passenger takes with him for his personal use or convenience, according to the habits or wants of the particular class to which he belongs, either with reference to the immediate necessities or ultimate purpose of the journey. (Bouv. Law Dict. vols. 1 and 2, 220 and 132; 10 How. Pr. 333; 14 Pa. St. 129; 30 N. Y. 594; 52 N. Y. 429.)

The defendant had knowledge of the character of the articles tendered for shipment as baggage, and having received and checked them as such without objection, is liable on their loss as for baggage, although they were not properly within the meaning of that term. (Story on Bail. § 77.)

No reply is necessary when the allegation in the answer

merely raises the question of the truth of the allegations set forth in the complaint. (*Ferguson* v. *Tutt*, 8 Kas. 371; *Nelcott* v. *Porter*, 19 Kas. 131.)

Mere conclusions of law need no reply. (*Dunning* v. *Pond*, 5 Minn. 302; Bliss on Code Pl. § 397.)

Want of a reply may be waived by proceeding to trial upon the evidence, as if the facts to which a reply is necessary had been denied. (*State* v. *Williams*, 77 Mo. 463; *Woodward* v. *Sloan*, 27 Ohio St. 592.)

Lord, J.—The defendant does not deny liability for the loss or destruction of the personal baggage of the plaintiff and of the members of his troupe, but it denies liability for property other than actual personal baggage.

In determining the question presented by this record, it is necessary to understand the nature and extent of the obligation which a carrier of passengers by rail assumes as respects the personal baggage of the passenger. That obligation requires it not only to carry the passenger, but also to carry a reasonable amount of his personal baggage. "The carriage of the baggage of the passenger," said Andrews, J., "under reasonable limitations as to amount, is the ordinary incident to the carriage of the passenger, and the duty arises on the part of the company to carry the baggage of the passenger as incident to the principal contract without any specific agreement or separate compensation." (*Isaacson* v. *R. R. Co.* 94 N. Y. 278.) As respects such baggage, a carrier of passengers is held to the same liability as a common carrier of goods. For its loss or destruction, save by the act of God or the public enemy, it must respond, though without fault on its part. To this extent it is an insurer, and is responsible for the carriage and safe delivery of such baggage, the same as goods intrusted to it as freight. But it is only to such articles as may be legally termed baggage that such liability attaches, no matter what may be the contents of the bag or trunk. As to what constitutes baggage in the legal sense, or ordinary baggage, or personal baggage, as commonly used in England, it has been found by the courts difficult if not

impossible to define with accuracy within the meaning of the rule of the carrier's liability.

"It is agreed on all hands," said ERLE, C. J., " that it is impossible to draw any very well-defined line as to what is and what is not necessary or ordinary luggage for a traveler. That which one traveler would consider indispensable would be deemed superflous and unnecessary by another. But the general habits and wants of mankind must be taken to be in the mind of the carrier when he receives a passenger for conveyance." *Phelps* v. *L. & W. R. Co.* 19 C. B. N. S. 321.) In a general sense, it may be said to include such articles as it is usual for persons travelling to take with them for their pleasure, convenience and comfort according to the habits and wants of the class to which they belong. In *Weeks* v. *R. R. Co.* 9 Hun 669, it is said that a passenger may carry with him "such articles of necessity and convenience as are usually carried by passengers for their personal use and comfort, instruction and convenience or protection." In *Jordan* v. *Fall River R. Co.* 5 Cush. 69, 51 Am. Dec. 44, the rule is stated to be "that baggage includes such articles as are of necessity or convenience for personal use, and such as is usual for persons travelling to take with them." In *Johnson* v. *Stone,* 11 Humph. 419, the court said : "It is not practical to state with precise accuracy what shall be included by the term baggage. It certainly includes articles of necessity and personal convenience usually carried by passengers for their personal use; and what these may be will very much depend upon the habits, tastes and resources of the passenger." In *Hannibal R. Co.* v *Swift,* 12 Wall. 262, Mr. Justice FIELD said that the contract to "carry the person only implies an undertaking to transport such a limited quantity of articles as are ordinarily taken by travelers for personal use and convenience, such quantity depending, of course, upon the station of the party, the object and length of his journey and many other considerations."

In *Macrow* v. *The Great Western Railway,* L. R. 6 Q. B. 612, COCKBURN, C. J., said: "Whatever the passenger takes

with him for his personal use and convenience, according to the habits or wants of the particular class to which he belongs, either with reference to the immediate necessities or to the ultimate purpose of the journey, must be considered as personal luggage. This would include not only articles of apparel, whether for use or ornament,  *  *  * but also the gun-case or fishing apparatus of the sportsman, the easel of the artist on a sketching tour, or the books of the student, and other articles of an analogous character, the use of which is personal to the traveler and the taking of which has arisen from the fact of his journeying. On the other hand, the term ordinary luggage, being thus confined to that which is personal to the passenger and carried for his use and convenience, it follows that what is carried for the purpose of business, such as merchandise and the like, or for larger and ulterior purposes, such as articles of furniture or household goods, would not come within the description of ordinary luggage unless accepted as such by the carrier." See also 1 Am. & Eng. Ency. of Law, " Baggage," 1042; 2 Rorer on Rail. 988; Hutchinson on Carriers, §§ 674, 685, 686. So that it would seem that baggage in the sense of the law may consist of such articles of apparel as the necessity, convenience, comfort or recreation of the passenger may require him to take for his personal use, according to the habits or wants of the particular class to which he belongs, either with reference to the immediate necessities or the ultimate purpose of the journey.

The question what articles of property, as to quantity and value, contained in a trunk, may be deemed baggage within the rule, is to be determined by the jury according to the circumstances of the case, subject to the power of the court to correct any abuse. (*Railroad Co.* v. *Fraloff*, 100 U. S. 24; *Romar* v. *Maxwell*, 9 Humph. 622; *Brock* v. *Gale*, 14 Fla. 523, 14 Am. Rep. 356; *Mauritz* v. *N. Y. R. Co.* 21 Am. & E. R. Cases, 286.) As the contract of the carrier of passengers is to carry a reasonable amount of baggage for the accommodation of the passenger, "it follows from the nature and object of the

contract," as observed by APPLETON, C. J., "that the right of the passenger is limited to the baggage required for his pleasure, convenience and necessity during the journey." (*Wilson* v. *Grand Trunk R. R. Co.* 56 Me. 62, 96 Am Dec. 435.)

Articles of whatever kind that do not properly come within the description of ordinary baggage are not included within the terms of such contract, nor is the carrier liable for their loss or destruction in the absence of negligence. Stage properties, costumes, paraphernalia, advertising matter, etc., are not articles required for the pleasure or convenience or necessity of the passenger during his journey, but are plainly intended for the larger or ulterior purposes of carrying on the theatrical business. They do not fall, therefore, under the denomination of baggage, and, in the absence of negligence, no liability can arise against the carrier for their loss or destruction, unless accepted as baggage by the carrier, and so the special verdict of the jury found. They segregated the articles which might properly be termed baggage from those carried for the purposes of business, and found separately the value of each, but by their general verdict found the company liable for the full value of the property upon the assumption that the trunks and their contents were received by the company as baggage.

The bill of exceptions discloses that the court charged the jury among other things as follows: "There is another phase of this question. If you find from all the evidence in the case that these trunks were brought to the agent of the company, and their appearance indicated that they might not only contain the personal baggage, in the strict sense of the word, of the party, but that other things than baggage were received without objection, and no fraud or concealment was practiced by the plaintiff; if the trunks on their face advertised fully what their contents were, and their agents received them under these circumstances, and gave checks for them, and the company, through these agents and employes, took them into its charge without making any objection,—then the defendant is to be deemed to have taken these articles

as baggage," etc.   In substance, the complaint alleges that the defendant was fully informed of the contents of the trunks prior to their delivery, and that the defendant received and checked them as baggage, which is put in issue by the denials of the answer.   Although the bill of exceptions contains no evidence, nor is any certified to us by this record, the issue permitted and the instruction was designed to meet the evidence upon this phase of the case.   Under such circumstances, we are bound to assume that there was evidence tending to show that the defendant had notice of the nature of the property, and received it as baggage for transportation.   In this view, the general verdict is not inconsistent with the special findings, for if the defendant knowingly permitted the plaintiff to take as baggage articles that would not come under that description, it is liable for their loss though not arising from its negligence.   While it is true that passenger carriers are not liable for merchandise and the like when packed up with a traveler's baggage, if the baggage be lost, yet if the merchandise be so packed as to be obviously merchandise to the eye, and the carries takes it without objection, he is liable for the loss. (Story on Bail. § 499.)   Thus in the case of *Great Northern Ry. Co.* v. *Shepherd*, 8 Ex. 30, PARKE, B., said: "If the plaintiff had carried these articles exposed, or had packed them in the shape of merchandise, so that the company might have known what they were, and they had chosen to treat them as personal luggage and carry them without demanding any extra remuneration, they would have been responsible for the loss.   So, also, upon any limit in point of weight, if the company chose to allow a passenger to carry more, they would be liable."   And in *Macrow* v. *Great Western Ry. Co. supra,* COCKBURN, C. J., said: "If the carrier permits the passenger, either on payment or without payment of an extra charge, to take more than the regulated quantity of luggage, or knowingly permits him to take as personal luggage articles that would not come under that denomination, he will be liable for their loss though not arising from his negligence."

In *Sloman* v. *Great W. Ry. Co.* 6 Hun, 546, GILBERT, J., after stating and citing authorities to sustain the proposition that railroad companies are not liable for the loss of merchandise delivered to them under the guise of baggage for transportation along with a passenger, said: "They are liable, if they knowingly undertake to transport merchandise in trunks or boxes which have been received by them for transportation, in passenger trains, unless the agent who receives the packages for that purpose violates a regulation of the company by so doing, and the passenger or owner of the goods has notice of such regulation"; citing *Butler* v. *Hud. R. R. Co.* 3 E. D. Smith, 571, and other cases. See also 2 Wait's Actions & Defenses, 82. "Doubtless," said MITCHELL, J., "if the carrier had actual notice of the nature of the property and still received it as baggage, he would be liable." (*Haines* v. *C. St. P. & M. & O. Ry. Co.* 29 Minn. 161, 43 Am. Rep. 199.) So in *Texas, etc., Ry. Co.* v. *Capps*, 16 A. & E. R. Ca. 118, it was held that where a railroad company, through its baggage or ticket agent, receives articles for transportation as baggage, knowing at the time that such articles are not properly baggage, the company will be responsible therefor as a common carrier, and will be estopped from denying that the same was baggage. (*C. R. I. & P. R. Co.* v. *Conklin*, Id. 116; *Minter* v. *P. R. Co.* 41 Mo. 503, 97 Am. Dec. 288.) Again, in *Hoeger* v. *C. M., etc., Ry. Co.* 63 Wis. 100, 53 Am. Rep. 271, a travelling agent applied to a railroad company to transport his sample trunks as baggage, and the company knowing their contents, received and checked them as baggage, and carried them as such on the passenger train on which he rode, and the court held that both parties were estopped to claim that such trunks were not baggage, and to be treated as such, and not as ordinary freight. So that while the obligation of a carrier of passengers is limited to ordinary baggage, yet if it knowingly permits a passenger, either on payment or without payment of an extra charge, to take articles as personal baggage which are not properly such, it will be liable for their loss or destruction though without fault. Now, the issue invites and the instruction

indicates that there was evidence tending to prove that the contents of the trunks were fully advertised, and that the agent of the defendant knew that they contained, besides personal apparel, stage costumes and properties, and that they were received and checked as baggage, and in such case, the defendant is liable for loss though without fault, as the jury have found by their verdict, and the court affirmed by its judgment.

In this view there is no inconsistency in the general verdict with the special findings, and the judgment must be affirmed.